IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **KYTE CENTRIFUGE, LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**EVERETT FARR,**<br><br>*Defendant*. | **CIVIL ACTION NO.**<br>**3:22-cv-00095-TES** |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

As the Court now turns to Defendant's Motion to Dismiss, it must decide whether it has jurisdiction over this conversion suit that involves a Florida company suing a Pennsylvania citizen to recover personal property—a large piece of equipment—that isn't in Georgia. [Doc. 9]; *see also* Fed. R. Civ. P. 12(b)(2) and 12(b)(3). For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

**A.  Plaintiff's Complaint**

On October 3, 2022, Plaintiff filed a Complaint [Doc. 1] against Defendant for conversion—specifically, replevin and trover—for a Sharples P3400 Decanter Centrifuge System ("Centrifuge") valued at $105,000.00. [Doc. 1, ¶¶ 8–9]. Plaintiff, Kyte Centrifuge, LLC, is a Florida Limited Liability Company with its principal address in

Biltmore Lake, North Carolina. [*Id.* at ¶ 3]. The sole member of Kyte Centrifuge is David Kyte, a North Carolina resident and citizen. [*Id.*]. Defendant Everett Farr is a Pennsylvania resident and citizen. [*Id.* at ¶ 4].

According to Plaintiff, on December 14, 2018, it provided NewBridge Global Ventures ("NewBridge Global") with a rental quote for the Centrifuge that included a rental rate of $2,500.00 per week with a two-week minimum charge of $5,000.00.[1] [*Id.* at ¶¶ 8–9]. The purchase price for the unit was $105,000.00 with up to $5,000.00 in rental fees as a credit towards the purchase. [*Id.* at ¶ 9]. Plaintiff entered a rental contract with NewBridge Global on May 14, 2019, and shipped the Centrifuge to NewBridge Global— though the Complaint doesn't specify the geographic location of NewBridge Global— on June 3, 2019. [*Id.* at ¶¶ 10–11]. According to Plaintiff, because NewBridge Global failed to pay and follow the rental agreement, which covered the rental period from July 10, 2019, to September 4, 2019, it made a demand to NewBridge Global for the return of the Centrifuge on November 1, 2021. [*Id.* at ¶¶ 12–13]. However, NewBridge Global refused to return the equipment. [*Id.* at ¶ 12]. Plaintiff made another demand on March 21, 2022. [*Id.* at ¶ 15]. Plaintiff alleges Defendant took the Centrifuge from NewBridge Global to Oconee County, Georgia. [*Id.* at ¶ 14].

---

[1] Plaintiff didn't name NewBridge Global as a defendant. As of early 2019, NewBridge Global's principal place of business has been San Francisco, California. [Doc. 18-1, Farr Depo., pp. 19–20].

B.     **Factual Background**

On March 21, 2023, well after Plaintiff filed its Complaint, the Court held a telephone conference and gave the parties a chance to locate the Centrifuge and depose Defendant to determine whether the Court has jurisdiction. [Doc. 13]; *see also* [Doc. 18-1, Farr Depo., p. 6:6–8]. The Court takes the following facts from Defendant's deposition, as well as declarations from the Oconee County Sheriff, the owner of the Oconee County property, and the CEO of NewBridge Global. [Doc. 18-1, Farr Depo.]; [Doc. 19-1, Hale Decl.]; [Doc. 19-2, Smith Decl.]; [Doc. 19-3, Dalton Decl.].

Defendant Everett Farr is a managing director of one of NewBridge Global's subsidiaries—an LLC that owns property in Oakland, California—although he's not an officer of NewBridge Global. [*Id.* at pp. 9, 12–13]. He's also President of AFAB Industrial Services ("AFAB")—a manufacturer of chemicals, boats, and trailers, among other things.[2] [*Id.* at p. 11]. Lance Dalton, though not a defendant, is another key player in this story. He's the current CEO of NewBridge Global and was one of the board members who entered into an agreement with Defendant that gave him an option to take over 25% of the company, an option Defendant hasn't exercised.[3] [*Id.* at pp. 15, 21]. Defendant met Dalton around August 2018 through mutual connections. [*Id.* at pp. 16–

---

[2] AFAB Industrial Services is incorporated and has its principal place of business in Pennsylvania. [Doc. 18-1, Farr Depo., p. 19]

[3] However, Defendant owns "maybe 30,000" shares of NewBridge Global, and although he's never received a paycheck from NewBridge Global, he has invested in its technology. [Doc. 18-1, Farr Depo., p. 15].

3

17]. Prior to meeting Dalton, Defendant entered the extraction side of the CBD market and used NewBridge Global's technology in conducting experiments in this field. [*Id.* at p. 16].

Sometime in 2021, Defendant, through AFAB, conducted testing using NewBridge Global's technology in a large hemp field in Arvin, California. [*Id.* at pp. 23, 34]. Dr. Trent Jones—the owner of a facility in Arvin that NewBridge Global and AFAB used for CBD testing—locked NewBridge Global out of the facility within less than a month of them using it. [*Id.* at p. 23]. Then, because Dr. Jones defaulted on his lease, Defendant worked with the landlord to retrieve his property. [*Id.*]. The landlord agreed to release all equipment if Defendant paid back rent. [*Id.* at pp. 23–24].

Around this time, NewBridge Global wanted to start testing in Georgia because it formed an alliance with the University of Georgia related to food technology. [*Id.* at p. 23]. Dalton asked Defendant to move the Centrifuge—along with other equipment—from California to Georgia because Defendant had a truck going that way already and had "done a lot of things like that for NewBridge" in the past. [*Id.* at pp. 29, 31:5–10]. Defendant contracted with Miot Trucking to ship AFAB's and NewBridge Global's equipment from California to Georgia, and he—through AFAB—paid for it. [*Id.* at pp. 25, 31:15–19, 31:24–25].

Defendant wasn't in California when Miot Trucking packaged the equipment, and he wasn't in Georgia when Miot Trucking dropped it off. [*Id.* at pp. 30, 35–36]. In

4

fact, he never did anything related to the testing in Georgia other than speak with a NewBridge Global employee "to make sure that the right electricity was in the building, which it wasn't." [*Id.* at p. 26:20–24]. He also had conversations with Jesse Magallanes, who was at the facility in California and later at the facility in Georgia, regarding getting the equipment on and off the truck. [*Id.* at pp. 32–37]. Defendant never went to Georgia to see the equipment or help set it up. [*Id.* at p. 27:19–21]. Additionally, no AFAB employee was in Georgia to receive the equipment when Miot Trucking dropped it off. [*Id.* at p. 36]. Although AFAB's equipment was at the same facility in Georgia as NewBridge Global's, Defendant sent a truck to pick up AFAB's equipment and take it to Pennsylvania sometime in 2022. [*Id.* at pp. 44–47]. Defendant did so because Dalton informed him that the property's landlord "wanted to sell the building or something," and that NewBridge Global was "not doing anything" there anymore. [*Id.* at p. 47:11–15]. According to Defendant, he removed his equipment "right around when [Plaintiff] filed [this] lawsuit." [*Id.* at p. 52:12–13].

Defendant and Dalton speak once or twice a week. [*Id.* at p. 42]. However, Defendant hasn't asked Dalton where the Centrifuge is because he doesn't "want to get involved." [*Id.* at 43:12]. Still, he's asked Dalton repeatedly to call Plaintiff's lawyer in hopes that the two of them will discuss where the Centrifuge is currently located. [*Id.* at p. 43]. In his deposition, Defendant exclaimed, "I will be the first to say Lance Dalton knows where the [Centrifuge] is." [*Id.* at p. 52:19–21]. Defendant doesn't know where

5

the Centrifuge is, nor does he "want to know." [*Id.* at p. 51:23].

James A. Hale, Jr., Sheriff of Oconee County, didn't see the Centrifuge when he inspected the property in Oconee County on May 9, 2023. [Doc. 19-1, Hale Decl., pp. 1–2]. Luke Smith, one of the former owners and landlord of the Oconee County property declared that sometime before October 2022, NewBridge Global removed its equipment from the property and "left the space empty." [Doc. 19-2, Smith Decl., p. 1]. Smith also declared that "[t]he building at 1210 Greensboro Highway since burned, and there was no equipment in the building when it burned." [*Id.* at pp. 1–2]. Finally, Dalton declared that NewBridge Global removed its equipment from the Oconee County property "[s]ometime before October 2022," Defendant was not involved in moving the equipment to—or removing it from—the Oconee County property, and Plaintiff's counsel called Dalton before Plaintiff filed his Complaint in October 2022. [Doc. 19-3, Dalton Decl., pp. 1–2].

## II. DISCUSSION

A.   **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff's complaint is subject to dismissal if there's a lack of personal jurisdiction over the defendant. The presence or absence of personal jurisdiction is a question of law. *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). "A plaintiff seeking the exercise of personal

6

jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal*, 593 F.3d at 1257 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

When a nonresident defendant challenges jurisdiction, and supports the challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal*, 593 F.3d at 1257. The plaintiff must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citations and quotations omitted). Where "the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Mandara*, 916 F.2d at 1514. Although a verified complaint may be treated as an affidavit, the Eleventh Circuit "has consistently held that conclusory allegations [in an affidavit] without specific supporting facts have no probative value." *Jacoby v. Baldwin Cty.*, 666 F. App'x 759, 762 (11th Cir. 2016) (quoting *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

Under Rule 12(b)(3), a party may assert improper venue as a defense to a claim

for relief. Fed. R. Civ. P. 12(b)(3). When a defendant objects to venue, "[t]he plaintiff has the burden of showing that venue in the forum is proper." *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006). In considering a motion filed pursuant to Rule 12(b)(3), a court must accept the facts in the plaintiff's complaint as true. *Simbaqueba v. U.S. Dep't of Def.*, No. CV 309-066, 2010 WL 2990042, at *2 (S.D. Ga. May 28, 2010). "However, when a Rule 12(b)(3) motion is predicated upon key issues of fact, the court may consider matters outside the pleadings." *Id.* Where conflicts exist between the allegations in the complaint and the evidence outside of the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

Venue is determined in accordance with the requirements of 28 U.S.C. § 1391(b), which provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). For purposes of the residency of corporations in states with multiple districts, such as Georgia:

> such corporation shall be deemed to reside in any district in that State

within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

§ 1391(d). A court presiding over a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Trial courts generally have broad discretion in evaluating venue arguments and determining whether to transfer or dismiss a case. *England v. ITT Thompson Indus.*, 856 F.2d 1518, 1520 (11th Cir. 1988). Additionally, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

B. **Analysis**

1. **Georgia's Long-Arm Statute**

A federal court "undertakes a two-step inquiry to determine whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal*, 593 F.3d at 1257–58 (citation and quotations omitted). District courts in Georgia cannot conflate these two inquiries because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process. *Id.* at 1258–59. Instead, the long-arm statute "imposes

9

independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* (footnote omitted). This Court must interpret and apply Georgia's long-arm statute literally. *Id.* at 1258–61; *see also Ascension Tech. Grp. Ltd. v. AIP Asset Mgmt., Inc.*, No. 1:16-CV-4312-MHC, 2017 WL 3113420, at *3 (N.D. Ga. Mar. 30, 2017).

The Georgia long-arm statute provides, in relevant part, as follows:

A court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. §§ 9-10-91(1)–(3).

Plaintiff claims the Court has personal jurisdiction under O.C.G.A § 9-10-91(1), which permits jurisdiction where a plaintiff's cause of action "arise[s] from" a nonresident defendant's "transact[ion of] any business within [Georgia]." *Diamond Crystal*, 593 F.3d at 1264; [Doc. 18, pp. 4–6]. Jurisdiction is proper under this provision where "the nonresident defendant has purposefully done some act or consummated

some transaction in [Georgia]," *Diamond Crystal*, 593 F.3d at 1264, and "the cause of action arises from or is connected with such act or transaction," *Henriquez v. El Pais Q'Hubocali.com*, 500 Fed. App'x 824, 828 (11th Cir. 2012). "[A] defendant need not physically enter the state," and "a nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Diamond Crystal*, 593 F.3d at 1264 (citations and quotations omitted). Courts should "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Id.*

Plaintiff provides no evidence that Defendant is or has ever been a Georgia citizen or resident. Likewise, Plaintiff provides no evidence that Defendant owns a corporation that is registered in Georgia or has its principal place of business in Georgia. Sure, Plaintiff has visited Georgia before. [Doc. 19-1, Farr Depo., pp. 37–38, 67–68]. Additionally, Plaintiff stated in his deposition that his only participation in moving the equipment to and from Georgia involved conversations related to shipping the equipment, discussing the electricity in the building at the Oconee Property, and working with Miot Trucking to move the equipment. [*Id.* at pp. 26, 32–36, 45–48]. Although these conversations may constitute some tangential level of transacting business in the state of Georgia, the Court finds that these limited conversations cannot fairly be said to amount to conducting business within the state of Georgia sufficient to

11

satisfy the first prong of Georgia's long-arm statute.

Plaintiff seems to rely primarily on O.C.G.A. § 9-10-91(1) in arguing that jurisdiction is proper under Georgia's long-arm statute. [Doc. 18, pp. 4–6]. However, to be thorough, the Court finds that jurisdiction isn't proper under the second and third prongs of the statute, either.[4] O.C.G.A. § 9-10-91(2)–(3). Conversations regarding moving the Centrifuge to Oconee County and ensuring that the rented premises had sufficient electricity were not the events that gave rise to Plaintiff's cause of action—conversion. Accordingly, the Court finds that Plaintiff has not met its burden to produce evidence supporting the exercise of personal jurisdiction against Defendant under the "commits a tortious act" prong of Georgia's long-arm statute. O.C.G.A. § 9-10-91(2).

Regardless of whether Plaintiff has sufficiently alleged that Defendant committed a tortious injury in Georgia, Plaintiff has failed to allege that Defendant *regularly* does business or engages in any other persistent course of conduct in Georgia. *See* O.C.G.A. § 9-10-91 (establishing that a court can exercise personal jurisdiction over a nonresident defendant under subsection (3) of Georgia's long-arm statute only: "if the tort-feasor regularly does or solicits business, or engages in any other persistent course

---

[4] Although Plaintiff primarily relies on the first subsection, it quoted the first three subsections and part of the fourth in its Supplemental Brief. [Doc. 18, pp. 3–4]. Additionally, Plaintiff seemed to have primarily relied on O.C.G.A. § 9-10-91(2) in its Memorandum in Opposition to Defendant's Motion to Dismiss. [Doc. 11, pp. 4–5]. Because the Centrifuge is not real property, and no one argues that this case relates to divorce or alimony/child support, the Court doesn't address subsections (4)–(6) of O.C.G.A. § 9-10-91.

of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]."). Remember, the Defendant here is Everett Farr, not NewBridge Global or AFAB. Plaintiff offers no evidence showing that Defendant Farr, acting on *his* behalf, engaged in any ongoing business in Georgia, and Plaintiff stated in his deposition that his involvement in moving the equipment to and from Georgia, and then to Pennsylvania, was limited. Because there is no evidence that Defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]," the second requirement of subsection (3) of Georgia's long-arm statute isn't satisfied and the Court lacks personal jurisdiction pursuant to O.C.G.A. § 9-10-91(3).

### 2. **Due Process**

Even if the exercise of jurisdiction was appropriate under Georgia's long-arm statute, the Court concludes that, for many of the same reasons as discussed above, subjecting Defendant to suit in Georgia would nonetheless violate the Due Process Clause. *See Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 857 (11th Cir. 1990) (holding that the mere satisfaction of the long-arm statute does not automatically satisfy due process concerns).

The Due Process Clause of the Fourteenth Amendment protects a nonresident's liberty interest in not being bound to a judgment in a foreign state (Georgia, in this

case), without first establishing meaningful "contacts, ties, or relations" with that foreign jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010). The contacts that a nonresident defendant has with the forum must be sufficient so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002). The touchstone of this constitutional protection is "fair warning," such that a nonresident defendant can reasonably anticipate being haled into court in that forum. *PVC Windoors, Inc.*, 598 F.3d at 811 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in the judgment)) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). States may therefore exercise jurisdiction only over "those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Diamond Crystal*, 593 F.3d at 1267 (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)) (quotations and citations omitted).

The nature and quality of the contacts a nonresident defendant must have with the forum vary depending upon whether the type of personal jurisdiction being asserted is specific or general. *Helicopteros*, 466 U.S. at 413–16 nn. 8–11. Contacts supporting specific jurisdiction must arise out of the events or transactions underlying the claim that form the basis of the lawsuit. *Diamond Crystal*, 593 F.3d at 1267. This step

of the specific-jurisdiction inquiry focuses on "'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer*, 433 U.S. at 204 (1977)).

The Eleventh Circuit has adopted a three-part due process specific personal jurisdiction test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King*, 471 U.S. at 472–75).

> In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies.

*Meier*, 288 F.3d at 1276.

None of these factors weigh in favor of exercising jurisdiction over the parties. Neither Plaintiff nor Defendant are Georgia residents. As stated earlier, Plaintiff is a Florida Limited Liability Company with a North Carolina principal address. [Doc. 1, ¶ 3]. The sole member of the Plaintiff LLC is David Kyte, a North Carolina resident and citizen. [*Id.*]. Defendant Everett Farr is a Pennsylvania resident and citizen. [*Id.* at ¶ 4].

Importantly, the Centrifuge was not in the Middle District of Georgia when Plaintiff filed its Complaint on October 3, 2022, and it isn't here now. [Doc. 19-2, Dalton Decl., ¶ 4]; [Doc. 1]. Put simply, Georgia doesn't have an interest in adjudicating this dispute, and neither party has shown how adjudicating this dispute in Georgia would be convenient for anyone.

Bottom line, the Court finds that subjecting Defendant to suit in this District under these facts clearly offends notions of fair play and substantial justice. Plaintiff has failed to show that Defendant, acting in his individual capacity, has purposefully availed himself of the benefits and privileges of conducting business in Georgia so that he could reasonably foresee that he could have been haled into court in Athens.

Because this Court lacks jurisdiction over this case, it need not analyze Defendant's improper venue argument. [Doc. 9, pp. 1, 3]; Fed. R. Civ. P. 12(3).

### III. CONCLUSION

For the reasons noted above, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 9] and **DISMISSES** Plaintiff's claims **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk of Court to enter Judgment accordingly and to **CLOSE** this **case**.

**SO ORDERED**, this 6th day of June, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**